UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| FLATHEAD-MICHIGAN I, LLC,<br>a Delaware limited liability company, | Case No. 1:09-cv-1006 |
| Plaintiff, | |
| v. | HONORABLE PAUL L. MALONEY |
| SUTTON'S POINTE DEVELOPMENT, LLC,<br>a Michigan limited liability company, | Magistrate Judge Joseph G. Scoville |
| JEFFREY R. ROTH and WENDY ROTH,<br>MARCUS YONO, | |
| VANDRIE FURNITURE COMPANY OF CADILLAC<br>doing business as Vandrie Home Furnishings, | |
| ANN ARBOR NEWS,<br>WASTE MANAGEMENT OF MICHIGAN , INC.,<br>NATIONAL CITY BANK,<br>ELMER'S CRANE AND DOZER, INC.,<br>INDEPENDENT BANK,<br>MOLON EXCAVATING, INC.,<br>LEELANAU COUNTY TREASURER, | |
| JAMES WALKER and JO ELLEN WALKER,<br>GARY COHEN and KAY COHEN,<br>LARRY DEAN and LINDA DEAN, | |
| Defendants. | |

---

FIRST PLACE BANK,

    Intervenor,

    v.

O'KEEFE AND ASSOCIATES CONSULTING, LLC, |
|
    Interim Receiver for Limited Purposes. |
|

**ORDER**

**Abstaining from the Exercise of Jurisdiction;
Denying without Prejudice as Moot the Plaintiff's Receivership Motions (Docs 52 and 53)**

Non-party Fifth Third Bank ("Fifth Third") extended credit to defendant Sutton's Pointe as evidenced by five promissory notes ("prom notes"), all of which were amended on May 24, 2007, *see* Doc 52 Exs A-G. As security for the repayment of these five prom notes, Sutton's Pointe executed a first-priority Mortgage in favor of Fifth Third, *see* Doc 52 Ex I, on the real property known as the Bay View Condominiums in Suttons Pointe, Michigan ("Sutton's Pointe"). In addition, defendants Jeffrey Roth and Marcus Yono each executed joint and several guarantees in favor of Fifth Third dated May 23 and August 26 and October 24, 2005 and December 14, 2007 (collectively "the Guarantees"), *see* Doc 52 Ex J. In February 2009, plaintiff Flathead-Michigan I,. LLC ("Flathead") acquired Fifth Third's rights under the prom notes, the mortgage, and the Roth/Yono personal guarantees. Sutton's Pointe defaulted under the prom notes by failing to make payments as and when required, and defaulted under the prom notes and the mortgage by failing to pay Year 2007, 2008 and 2009 real-property taxes due and owing on the Property.

Flathead filed the instant complaint in November 2009, claiming that Sutton's Pointe breached the prom notes and that Jeffrey Roth and Marcus Yono breached their personal guarantees. The complaint also seeks judicial foreclosure on the Bay View Condominium Real Property, and appointment of a receiver to protect and improve the common areas and sell the units in which

Flathead owns a putatively priority secured interest.

On January 11, 2010, plaintiff Flathead filed an emergency motion to appoint a receiver for the property of defendant Sutton's Pointe (Doc 36). Flathead served the motion on Sutton's Pointe and Marcus Yono (Doc 38), but they never filed anything in response, either before the January 20, 2010 deadline (Doc 37) or after. Defendant Leelanau County Treasurer filed a response on January 18, 2010 (Doc 39). Plaintiff Flathead negotiated a proposed order for appointment of a receiver with defendants Sutton's Pointe, Jeffrey Roth, and Marcus Yono, but the court heard oral argument on Flathead's first emergency receivership motion on January 22, 2010 because would-be intervenors (later allowed to intervene) objected to the proposed receivership. The court "temporarily" granted plaintiff Flathead's first emergency motion to appoint a receiver, and appointed a receiver for four limited purposes, *see* Doc 46 (amended minutes), but no order was issued.

The court then allowed six additional individuals to intervene as defendants as of right pursuant to FED. R. CIV. P. 24(a)(2) (Doc 49) on February 18, 2010: James and Jo Ellen Walker, Gary and Kay Cohen, and Larry and Linda Dean, all owners of units at Bayview Condominiums – and members of the non-profit corporation known as the Bayview Condominium Homeowners Association, *see* MICH. COMP. LAWS § 559.103 – and therefore co-owners of the common areas of Bayview. The court accepted these intervenor-defendants' explanation that plaintiff Flathead

> has not distinguished/earmarked the assessments due to the [condo owners] Association as being separate from that which it is seeking to have the receiver collect and apply to its mortgage balance, i.e., "all income from the Property and other assets, from and after the date of default, except to the extent [that] such income *was* used for the operation, management, and maintenance thereof."

Doc 41(Motion of Cohens, Deans, and Walkers to Intervene) at 3 ¶ 9.

The intervenor unit owners contended that Michigan statute gives them (as members of the

condo owners association) a lien on the condo assessments, and that the statute gives the lien "a certain super priority status." *See* Doc 41 (Brief) at 2. Plaintiff Flathead, however, contended that its mortgage interest takes priority because the Condo Owners Association's assessment lien is unrecorded. *See* Doc 52 at 4.

On March 5, 2010, plaintiff Flathead-Michigan filed two motions: an emergency motion for appointment of an interim receiver, and an emergency motion for appointment of a receiver with full powers and authority (Docs 52 and 53). Only the intervenor-defendants (the six condo owners Walker, Cohen and Dean) filed a response (Docs 57 and 58) on March 15, 2010 as ordered.

On March 26, 2010, the court issued an Order appointing an interim receiver for limited purposes, including but not limited to the payment of property taxes and utility bills, *see* Doc 59. On April 14, 2010, the court entered a stipulated order allowing First Place Bank to intervene, *see* Doc 62. Finally, on April 21, 2010, the court heard oral argument on the pending receivership motions, *see* Docs 63-64 (minute and amended minutes). At the hearing, the parties indicated a reasonable possibility that they could amicably resolve many or most of the issues before the court; the court scheduled a follow-up hearing for April 30, 2010, at which the parties indicated that they had been unable to reach even a partial settlement. There have been no further filings or appearances in the case since that time.

**The court concludes that this district's limited judicial resources have already been unnecessarily taxed by this controversy, which sounds purely in state law and could have been raised in state court long ago.** Flathead was permitted to intervene in the state-court action regarding the subject property back on November 12, 2009, more than half a year ago: it should have asserted these claims and squarely raised these issues in that court rather than instigating this

parallel action.

Supreme Court "precedent makes clear that whether a court has subject-matter jurisdiction over a claim is distinct from whether a court chooses to exercise that jurisdiction." *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, – U.S. –, 129 S.Ct. 1862, 1866 (2009) (citing, *inter alia*, *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992) (questioning whether, "even though subject matter jurisdiction might be proper, sufficient grounds to warrant abstention from the exercise of that jurisdiction") and *Iowa Mut. Ins. Co. v. Laplante*, 480 U.S. 9, 16 n.8 (1987) (Thomas, J., for the majority)).

In *Colorado River Water Conservation Dist. v. US*, 424 U.S. 800 (1976), the Supreme Court "instructed courts to consider several factors in determining whether to abstain in favor of a parallel proceeding in the courts of another sovereign." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 466 (6th Cir. 2009). Where it applies, "the 'most important' factor a court must consider is whether there is 'a clear federal policy evinc[ing] . . . the avoidance of piecemeal adjudication' found within the statutory scheme at issue." *Answers*, 556 F.3d at 466 (quoting *Colorado River*, 424 U.S. at 819). Here all the statutes at issue are *Michigan* statutes – namely, the Michigan Condominium Act (MICH. COMP. LAWS § 559.101 *et seq.*), Michigan's Cancellation of Mortgages Act (MICH. COMP. LAWS § 565.1 *et seq.*), and Michigan's "Race Notice" statute (MICH. COMP. LAWS § 565.29) – so by definition they would not evince or express any view of its enactors regarding *federal* policy regarding piecemeal litigation.

The court determines that the applicable *Colorado River* factors weigh solidly in favor of abstention: (1) the state court has assumed jurisdiction over the subject property, (2) the federal court in Kalamazoo is presumably less convenient for the parties than the state court in Leelanau

County, (3) expecting the plaintiff to raise these claims and issues in state court and have them resolved there avoids piecemeal litigation, (4) the state court acquired jurisdiction first, because the state-court action began several months before this action, (5) the governing law, as noted above, is entirely state law, (6) the state-court action should be adequate to protect the plaintiffs' rights[1], and (7) the state-court action has progressed farther than this action. *See Green Earth Cos., Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002) (quoting *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 206 (6th Cir. 2001)).[2]

---

[1] The plaintiffs should not expect success on a reconsideration motion which complains that it is now difficult for them to assert these claims and issues in the state-court action. The state-court action has been pending for months – longer than this action – and the record contains no suggestion of any obstacle which legally prevented the plaintiffs from asserting these claims and issues in the state-court action before (and instead of) filing this unnecessary federal action. In short, any difficulty in asserting these claims and issues in the state-court action now are due to the plaintiffs' continuing failure to refusal to seek leave to assert them there earlier.

[2] Moreover, as the defendants note, the rationale of *Burford* abstention, while not directly implicated, is furthered by abstention as well. As our Circuit has explained,

> [T]he *Burford* abstention doctrine provides that "where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar;' or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with regard to a matter of substantial public concern."

*Habich v. City of Dearborn*, 331 F.3d 524, 532 (6th Cir. 2003) (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 361 (1989) ("*NOPSI*")). While the record contains no evidence of state administrative-agency proceedings where the plaintiffs' claims and issues have been or could be raised, the *Burford / NOPSI* reasoning commends the resolution of the priority-of-liens issue to Michigan courts given that regulation of condominium development and assessment (and real property and real-property encumbrances generally) are uniquely within the purview of the States, not the federal government.

Thus, plaintiff is best left to assert these claims, and raise these issues – to the extent that they have not already been raised or implicated – in the pending state-court action which was filed nearly one year ago and before plaintiff filed the instant action (Case No. 09-8018-CH, filed in Leelanau County on July 13, 2009). *Cf. Moses H. Cone Mem. Hosp v. Mercury Const. Corp.*, 460 U.S. 1 (1983) (where plaintiff invoked diversity jurisdiction to file federal-court action to compel arbitration of a state-law contract dispute, the district court properly stayed the action pending completion of a state-court action in which the defendants had already sought declaratory judgment regarding the same contract). This court will not reward plaintiff's unusual choice to institute separate federal litigation, by getting embroiled in its purely state-law dispute about the priority of their liens (plaintiff's mortgage versus defendants' Michigan Condominium Act assessment lien). The Leelanau County court, with its earlier-filed lawsuit and its greater expertise in state-law matters, can resolve the priority dispute and any receivership or related issues in its pending case, if only Flathead would take action to ensure that these issues are presented to that court.

## **ORDER**

The court **ABSTAINS** from exercising jurisdiction.

Plaintiff's "Emergency Motion for Entry of Interim Receivership Order for Property of Defendant Sutton's Pointe Development, LLC and Determination as to Priority to Condominium Assessments" **[doc # 52] is DENIED without prejudice as moot**.

Plaintiff's "Emergency Motion for Appointment of Receiver with Full Powers and Authority for Property of Defendant Sutton's Pointe Development, LLC" **[doc #53] is DENIED without prejudice as moot**.

This case is **DISMISSED without prejudice**.

This case is **TERMINATED and CLOSED**.

**IT IS SO ORDERED** on this  26th  day of May 2010.

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge